FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 02, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JACLYN RAE SLEATER, and others,<br><br>    Plaintiffs,<br><br>    v.<br><br>BENTON COUNTY, a municipal corporation,<br><br>    Defendant. | No. 4:17-cv-05033-SAB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    Before the Court is Benton County's Motion for Summary Judgment, ECF No. 87. The motion was heard without oral argument. Benton County requests summary judgment dismissal of Plaintiff's 42 U.S.C. § 1983 claim, arguing that Plaintiff has failed to identify an official municipal policy that is the moving force behind the alleged constitutional violations. *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). Additionally, Benton County argues it is immune from suit because the alleged constitutional violations relate to a judicial act that is covered by judicial immunity. Under the doctrine of absolute quasi-judicial immunity, the Benton County Clerk's office enjoys immunity for issuing allegedly unlawful arrest warrants, and such immunity extends to Benton County. For the reasons set forth below, the Court concludes Benton County is entitled to summary judgment in its favor.

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 1**

# BACKGROUND

**A. Pay or Appear Legal Financial Obligations Collection Program.**

This case arises from the Benton County Clerk's office's collection of legal financial obligations (LFOs) pursuant to the "Pay or Appear" program. Under the program, if an LFO debtor missed a required monthly payment, the debtor was required to schedule a hearing and explain why he or she could not make the payment or appear at the Clerk's office by the 15th of the following month. If the LFO debtor failed to do either of these things, the Clerk's office had "the authority to sign and issue bench warrants." ECF No. 39-1 at 9. This was "the Clerk's office policy." ECF No. 39-1 at 6.

According to Josie Delvin, the Benton County Clerk, the Pay or Appear program was developed through a collaboration between the Clerk's office, Benton County Superior Court judges, the Benton County Prosecutor's office, and the Office of Public Defense (OPD). Ms. Devlin explained that the Clerk's office's policy to issue bench warrants without first issuing a summons or other court directive to appear at a hearing was made by the superior court judges, and was principally the decision of retired Benton County Superior Court Judge Swisher.

The Clerk's office's authority to issue arrest warrants for failure to pay LFOs was basically unchecked. In the process of issuing bench warrants for LFO non-payment, the warrants were not actually reviewed or signed by any judge. Instead, the warrants were reviewed and signed by Benton County Clerk's Office staff, under the statement "UNDER DIRECTION OF THE HONORABLE _____, Judge of Superior Court on [date]." ECF No. 62 at ¶ 8. The Clerk's office did not first inquire into the LFO debtor's ability to pay before it issued an arrest warrant because, according to Josie Delvin, that was "not [the Clerk's] office's responsibility; that's the judge's." ECF No. 39-1 at 9.

//

//

**B. *State v. Sleater* Decision.**

In April 2014, Plaintiff Jaclyn Sleater owed LFOs on three prior criminal cases. *State v. Sleater*, 194 Wash. App. 470, 472 (2016). On April 17, 2014, Plaintiff Sleater's mother made an online payment on her behalf. *Id*. And while the payment was accepted, it was not applied to all three cases – it was applied to only one case. *Id*. When Plaintiff Sleater failed to schedule a hearing to explain why she had not made a payment towards the LFOs in her other two cases, the Benton County Clerk's office issued a warrant for her arrest. *Id*.

Plaintiff Sleater was arrested on May 16, 2014. *Id*. During her arrest, law enforcement officers found her in possession of methamphetamine. *Id*. at 473. Plaintiff Sleater was charged with, and subsequently convicted of, possession of a controlled substance. *Id*.

Plaintiff Sleater appealed, arguing that the Benton County warrants were issued in violation of the Fourth Amendment. *Id*. The Washington Court of Appeals agreed and reversed Plaintiff's conviction. *Id*. at 477. The Court held that before a court issues a warrant for a debtor's failure to pay LFOs, it must first inquire into the debtor's ability to pay. *Id*. at 476.

> Courts can still issue warrants for the arrest of defendants who do not appear in court to discuss their LFOs. However, *Nasan* tells us that the courts cannot place the onus on the defendant to schedule her own hearing. Instead, we perceive that a summons or prior court order requiring the defendant to attend a specific hearing is necessary before a warrant can issue to arrest someone for not appearing to explain why she is (apparently) not meeting her payment obligations

*Id*. at 476-77.

Following the Washington Court of Appeals' decision, the Clerk's office changed its policy for collecting LFOs. Since June 2016, the Clerk's office no longer issues warrants for LFO non-payment. Instead, individuals who fail to pay

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 3**

their LFOs are issued a summons to appear at a hearing before the Benton County Superior Court.

### C. Class Action.

Plaintiff filed this class action on March 15, 2017. ECF No. 1. Plaintiff seeks monetary damages, injunctive, and/or declaratory relief against Benton County for engaging in a policy and practice of issuing arrest warrants for non-payment of LFOs without first issuing a summons or court directive to appear at a hearing.

On November 30, 2018, the Court certified the following class:

> **Issuance Class**: All persons to whom Benton County issued arrest warrants for failure to pay legal financial obligations without first issuing a summons or other court directive to appear at a hearing, from three years prior to the filing of this action through the date this matter is resolved.

Additionally, the Court certified the following subclass:

> **Incarceration Subclass**: All persons arrested and incarcerated from three years prior to the filing of this action through the date this matter is resolved, pursuant to arrest warrants issued by Benton County for failure to pay legal financial obligations that were issued without first issuing a summons or other court directive to appear at a hearing.

ECF No. 75.

## STANDARD

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies this burden, the non-moving party "must go beyond pleading and identify facts which show a

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 4**

genuine issue for trial." *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Celotex Corp.*, 477 U.S. at 323-24).

## DISCUSSION

Benton County argues Plaintiff's § 1983 claim should be dismissed for two reasons. First, Benton County argues Plaintiff has failed to identify an official municipal policy that is the moving force behind the alleged constitutional violations. *Monell*, 436 U.S. at 694 (1978). More specifically, Benton County argues the policy identified by Plaintiff cannot be attributed to it because the policy was not created by a municipal official with "final policymaking authority." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). The policy at issue was created by state judicial officers pursuant to their statutory authority over LFO debtors.

Second, Benton County argues it is immune from suit because the policy at issue relates to a judicial act that enjoys judicial immunity. By issuing arrest warrants under the Pay or Appear program, the Clerk's office was performing a function that was part of the judicial process for which the doctrine of absolute quasi-judicial immunity applies. And because the Clerk's office enjoys immunity for this conduct, such immunity extends to Benton County.

**1. Municipal Liability Under 42 U.S.C. § 1983.**

42 U.S.C. § 1983 provides a cause of action against any "person" who, under color of law, deprives an individual of federal constitutional or statutory rights. 42 U.S.C. § 1983. The United States Supreme Court has held that municipalities are "persons" within the meaning of § 1983. *Monell*, 436 U.S. at 690. A municipality may be sued under § 1983 only for those acts which "the municipality itself is actually responsible, 'that is, the acts which the municipality has officially sanctioned or ordered.' " *Praprotnik*, 485 U.S. at 123 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 5**

Stated differently, a municipality "may not be held liable under 42 U.S.C § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). The purpose of the "official municipal policy" requirement is to prevent municipalities from being held vicariously liable for unconstitutional acts of their employees under the doctrine of respondeat superior. *Monell*, 436 U.S. at 691; *Pembaur*, 475 U.S. at 478-79.

### A. The Policy at Issue Was Not Created by a Municipal Official with Final Policymaking Authority.

Plaintiff brings her § 1983 claim against Benton County for the Clerk's office's policy and practice of issuing arrest warrants for non-payment of LFOs without first issuing a summons or court directive to appear at a hearing. Plaintiff asserts this policy is attributable to Benton County because it was adopted by the Benton County Clerk who acts as an official policymaker for Benton County.

A municipality may be liable under § 1983 for the acts and omissions of municipal officials with "final policymaking authority." *Praprotnik*, 485 U.S. at 123. Whether a particular official has "final policymaking authority" is a question of state law. *Id*. (citing *Pembaur*, 475 U.S. at 483). Additionally, "the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business." *Praprotnik*, 485 U.S. at 123. "Authority to make municipal policy may be granted by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law." *Pembaur*, 475 U.S. 483.

In this case, the policy at issue relates to the issuance of arrest warrants for the failure to pay LFOs, without first issuing a summons or court directive to appear at a hearing. In Washington, state law grants superior court judges the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 6**

power to impose LFOs upon an individual as part of his or her sentence. Wash. Rev. Code § 9.94A.760(1). "For any offense committed on or after July 1, 2000, the court shall retain jurisdiction over the offender, for purposes of the offender's compliance with payment of the legal financial obligations, until such obligations is completely satisfied, regardless of the statutory maximum for the crime." Wash. Rev. Code § 9.94A.760(5). If an LFO debtor fails to pay his or her LFOs, "the court, upon the motion of the state, or upon its own motion, shall require the offender to show cause why the offender should not be punished for the noncompliance. The court may issue a summons or a warrant of arrest for the offender's appearance." Wash. Rev. Code § 9.94B.040(4)(b). Washington law authorizes the county clerk to "collect unpaid legal financial obligations at any time the offender remains under the jurisdiction of the court for purposes of his or her legal financial obligations." Wash. Rev. Code § 9.94A.760(5).

Josie Delvin testified that the Pay or Appear program was developed through a collaboration between the Clerk's office, Benton County Superior Court judges, the Benton County Prosecutor's office, and OPD. She further explained that the Clerk's office's policy to issue bench warrants without first issuing a summons or other court directive to appear at a hearing was made by the superior court judges, and was principally the decision of Judge Swisher.

Washington law makes clear that the Benton County Clerk's office does not have final official policymaking authority over whether an arrest warrant is to be issued for an individual's failure to pay LFOs, or the manner in which such arrest warrants are to be issued. This authority rests with superior court judges. Wash. Rev. Code § 9.94B.040(4)(b); § 9.94A.760(5). The record shows Benton County Superior Court judges created the policy in question and directed the Clerk's office to effectuate the policy in a specific manner.

Benton County argues Plaintiff's § 1983 claim should be dismissed because the policy at issue was not created by a municipal official with "final

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 7**

policymaking authority." *Praprotnik*, 485 U.S. at 123. Instead, it was created by state judicial actors pursuant to their statutory authority over LFO debtors.

In support of its position, Benton County cites *Eggar v. City of Livingston*, 40 F.3d 312 (9th Cir. 1994). In *Eggar*, a judge in the City of Livingston, Montana, would advise criminal defendants of their rights in groups, never explaining under what circumstances they had a right to counsel, and never explaining the meaning of the waiver form they were asked to sign. 40 F.3d at 313-14. The plaintiffs filed a § 1983 claim against the city and the judge, alleging the city had a policy of imprisoning indigent defendants without offering appointed counsel and without securing an effective waiver of the right to counsel. 40 F.3d at 313-14. The plaintiffs argued the city was liable under *Monell* because the judge acted as a policy maker for the city. *Id*.

The Ninth Circuit Court of Appeals affirmed the district court's decision to grant summary judgment in favor of the defendants. The critical question was whether, under state law, the judge's actions were performed under the authority of the municipality or the state. *Id*. at 314. The Ninth Circuit found the acts in question were performed by the judge in his capacity as a judicial officer, pursuant to the discretion afforded to him by the state. *Id*. "Judge Travis' acts and decisions advising indigents of their rights are not administrative or ministerial acts based on the judge's authority as a local official. However, the judge's treatment of indigent defendants was an exercise of judicial discretion drawn from the authority of the state, appealable to higher state courts, and closely analogous to actions found to be outside the scope of municipal liability." *Id*.

In reaching its decision, the Ninth Circuit focused on state law governing the acts in question. "As state law makes clear, the Judge's obligation to address the rights of defendants arises from his membership in the state judiciary. It is lamentable, but irrelevant, that he failed miserably to meet this obligation under

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 8**

both state and federal standards: he simply is not a municipal decision maker in this context." *Id.* at 315.

In this case, Washington law clearly authorizes superior court judges to impose LFOs and issue arrest warrants for a debtor's failure to pay LFOs. Wash. Rev. Code § 9.94A.760(5); § 9.94B.040(4)(b). The Washington Constitution vests superior court judges with the judicial power of the state. Wash. Const. Art. IV, Sec. 1. It is true that Washington law grants the county clerk's office with the responsibility for collecting LFOs on behalf of the superior court. Wash. Rev. Code § 9.94A.760(5). However, Plaintiff cites to no authority that would allow the Clerk's office to issue arrest warrants for LFO non-payment, on its own notion. Such authority is vested in superior court judges.

The Court acknowledges that the facts in this case are distinguishable from those in *Eggar*. In this case, while the policy at issue was created by Benton County Superior Court judges, it was effectuated by the Clerk's office. The Court finds this distinction is inconsequential because the source of the policy remains the same.

To illustrate the point, Benton County cites *Woods v. City of Michigan City, Ind.*, 940 F.2d 275 (7th Cir. 1991). In *Woods*, a superior court judge issued a bond schedule to law enforcements officers within LaPorte County, Indiana, requiring bond for those arrested for reckless driving. 940 F.2d at 278. The judge's directive conflicted with Indiana state law requiring the release of any person arrested for a traffic misdemeanor offense, upon a signed promise to appear in court at a later date. *Id.* at 277.

The plaintiff filed suit against Michigan City, LaPorte County, and several police officers alleging the police deprived him of liberty pursuant to a judge's directive that clearly conflicted with state law. *Id.* at 276-77. The plaintiff argued that the judge, as a judicial officer, acted a senior policymaking official sufficient to subject the city and county to liability under *Monell*. *Id.* at 277.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 9**

As was the case in *Eggar*, the critical issue in *Woods* was whether the judge, in issuing the directive in question, was acting as a policymaker with final policymaking authority under state law. *Id*. at 279. The Seventh Circuit Court of Appeals determined the judge was not acting as an official policymaker, for purposes of establishing liability under *Monell*. *Id*.

> Judge Arthur Keppen, author of the offending bond directive, is a judge of the LaPorte Superior Court. Under Indiana law, a judge of a court of criminal jurisdiction is the official with final authority for fixing bail. Indiana law reveals that judges of Indiana's circuit, superior and county courts are judicial officers of the State judicial system: "they are not county officials." County courts in Indiana are exclusively units of the judicial branch of the state's constitutional system …
>
> Reckless driving is a violation of state law. State courts, such as LaPorte Superior Court, have jurisdiction over such violations. Since Superior Court judges in Indiana are considered to be officials of the state, Woods' claim that Judge Keppen is an official of the city or county, or that his bond schedule is an "act that" Michigan City or LaPorte County have "officially sanctioned or ordered" is unfounded. *Pembaur* requires that "municipal liability under § 1983 attaches where, and only where, a deliberate choice to follow a course of action is made … by the official … responsible for establishing final policy …" No municipal lability attaches in this case because the judge under Indiana law is not such an official vis a vis the city and county. The city and county cannot be held liable under § 1983 unless Woods proved the existence of an unconstitutional municipal policy initiated by a final policymaker for the municipalities. Woods, by naming Judge Keppen as the source of the constitutional deprivation, detaches the local government from the unconstitutional policy.

*Woods*, 940 F.2d at 279 (internal citations omitted).

In this case, the critical question is whether the Benton County Superior Court judges, in creating the policy in question and directing the Clerk's office to issue arrest warrants for LFO non-payment, were acting as official policymakers for Benton County. The Court finds they were not. The Benton County Superior

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 10**

Court judges who issued this policy were acting as judicial officers of the state pursuant to their statutory authority over LFO debtors.

Plaintiff highlights the fact that the policy was created through a collaboration between the Clerk's office, Benton County Superior Court judges, the Benton County Prosecutor's office, and OPD. But this does nothing to change the fact that the policy was not created by a municipal official with "final policymaking authority." *Praprotnik*, 485 U.S. at 123. Washington law makes clear that such a policy could be created only by a superior court judge. Whether others assisted in its creation is inconsequential.

Plaintiff also argue that the Benton County Clerk had the full authority to issue, or not issue, a summons or other notice prior to issuing arrest warrants for failure to pay LFOs, but made the policy decision not to do so. Plaintiff's argument fails for at least two reasons. First, Josie Delvin clarified that the Clerk's office's policy to issue bench warrants without first issuing a summons or other court directive to appear at a hearing was made by the superior court judges, and was principally the decision of Judge Swisher. Thus, it cannot be said that the Clerk's office created this policy, it was simply effectuating Judge Swisher's directive.

Second, Plaintiff fails to establish that the Benton County Clerk is a municipal official with final policymaking authority over when arrest warrants are issued for LFO non-payment, and the manner by which such arrest warrants are to be issued. Such authority rests with superior court judges. *See* Wash. Rev. Code § 9.94B.040(4)(b) (if a debtor fails to pay his or her LFOs, "the court, upon the motion of the state or upon its own motion, shall require the offender to show cause why the offender should not be punished for the noncompliance. The court may issue a summons or a warrant of arrest for the offender's appearance.").

Finally, Plaintiff argues the actions of the superior court judges can be attributable to Benton County because they were acting as policymakers for the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 11**

Benton County, and not judicial officers of the state. A similar argument was made by the plaintiffs in *Eggar*. The Ninth Circuit acknowledged that a city may liable for a judge's actions under certain circumstances. *See Eggar*, 40 F.3d at 315. For example, in *Williams v. Butler*, 863 F.2d 1398 (8th Cir. 1998), the Eighth Circuit Court of Appeals held that a city may be subject to liability under § 1983 for a municipal judge's actions for unconstitutionally firing two clerks, when it was clear that the city had delegated to him final administrative authority over employment matters. *Id*. at 1402-03.

This argument fails for the same reason it did in *Eggar*. This case is about a policy related to the way arrest warrants were issued for failure to pay LFOs. Washington law makes clear superior court judges have the authority to impose LFOs upon criminal defendants, and to issue a summons or arrest warrant for an individual's failure to pay LFOs. Wash. Rev. Code § 9.94A.760(5); § 9.94B.040(4)(b). This authority is granted to superior court judges by the State of Washington, not Benton County. The Benton County Superior Court judges are simply not municipal decisionmakers in this context.

The policy at issue was created by state judicial officers pursuant to their authority under state law. As such, the policy cannot be attributed to Benton County. To find otherwise would allow Benton County to be liable for the Clerk's office's actions under a theory of respondeat superior. *Pembaur,* 475 U.S. at 478-79 (explaining that the purpose of the "official municipal policy" requirement is to prevent municipalities from being held vicariously liable for unconstitutional acts of their employees under the doctrine of respondeat superior).

In sum, Plaintiff has failed to identify an "official municipal policy" that can support her § 1983 claims under *Monell*. Therefore, Plaintiff's § 1983 claim is dismissed.

**2. Benton County Enjoys Immunity.**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 12**

Benton County also argues Plaintiff's § 1983 claim should be dismissed because the Clerk's office enjoys absolute quasi-judicial immunity over the challenged conduct.

Judges are absolutely immune from liability for damages in civil rights suits for judicial acts performed within their subject matter jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986). Acts are judicial where the acts are normally performed by a judge, and where the parties deal with the judge in his or her judicial capacity. *Sparkman*, 435 U.S. at 362; *Crooks v. Maynard*, 913 F.2d 699, 700 (9th Cir. 1990). "Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process." *Mullis v. United States Bankruptcy Court*, 828 F.2d 1385, 1390 (9th Cir. 1987); *Sharma v. Stevas*, 790 F.2d 1486, 1486 (9th Cir. 1986) (holding the United States Supreme Court Clerk enjoys absolute quasi-judicial immunity because his challenged activities "were an integral part of the judicial process.").

Benton County argues the Clerk's office enjoys absolute quasi-judicial immunity because it was performing a task that is integral to the judicial process. There is no question that the issuance of an arrest warrant is a judicial act for purposes of judicial immunity. *Ireland v. Tunis*, 113 F.3d 1435, 1441 (1997). While Benton County concedes the warrants were not individually reviewed and/or approved by superior court judges before they were issued, the warrants were nonetheless issued at the direction of a superior court judge with a seal of the superior court affixed on the warrant.

Plaintiff disagrees and characterizes the Pay or Appear program as an administrative policy created by superior court judges on whether and when judicial orders would be issued. When viewed in this light, Plaintiff argues the Pay or Appear program does not involve a judicial act and, therefore, is not covered by judicial immunity. *See Forrester v. White*, 484 U.S. 219, 227-29 (1988)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 13**

(explaining that absolute judicial immunity extends to those act which are truly judicial acts and not simply administrative acts).

In support of this position, Plaintiff cites *Morrison v. Lipscomb*, 877 F.2d 463, 464-66 (6th Cir. 1989). In *Morrison*, the chief judge of a district court in Michigan declared a moratorium on the issuance of writs of restitution[1] between December 15, 1986 and January 2, 1987, in observance of the holiday season. 877 F.2d at 464. The plaintiff was a landlord who had the authority to petition the court for a writ of restitution, in order to evict the tenants occupying his property. *Id*. The clerk of court refused to process the plaintiff's petition, citing the moratorium. *Id*. The plaintiff sued. *Id*.

The issue before the Sixth Circuit Court of Appeals was whether the judge was entitled to judicial immunity for his conduct in issuing the moratorium. *Id*. at 465. The Court acknowledges that Michigan law granted the judge the authority to issue the moratorium. *Id*. at 466. However, "simply because rule making and administrative authority has been delegated to the judiciary does not mean the acts pursuant to that authority are judicial." *Id*.

Instead, the Court found the judge's conduct in *Morrison* was administrative and, therefore, not covered by judicial immunity. *Id*. at 466. In reaching its decision, the Sixth Circuit focused on whether the judge's conduct involved an adjudication between parties.

> Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one. [The judge's] moratorium was a general order, not connected to any particular litigation. The order did not alter the rights and liabilities of any parties but, rather, instructed court personnel on how to process the petitions made to the court. This case differs from an adjudication in that a litigant offended by a judicial act can, in the vast majority of cases, appeal the court's decision to a higher court;

---

[1] A writ of restitution is a document that authorizes a court officer or local sheriff to schedule a tenant's eviction.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 14**

here, no direct appeal is available, making the absence of judicial liability far less reasonable.

*Id.*

//

Plaintiff argues that the Pay or Appear program in this case, like the moratorium in *Morrison*, is a general order that is not connected to any particular litigation. The Pay or Appear program, Plaintiff argues, is nothing more than an instruction to court personnel on how to process certain cases.

There is a critical difference, however, between the moratorium in *Morrison* and the Pay or Appear program in this case: an arrest warrant for LFO non-payment is an act that alters the rights and responsibilities of the affected parties, and is an act that can be challenged in court. The moratorium in *Morrison* involved a directive that sought to maintain the status quo during the holiday season by not processing a petition that would have resulted in an order of eviction. It was a directive of inaction, where the inaction did not impact the rights and liabilities of any parties. *Morrison*, 877 F.2d at 466.

The Pay or Appear program, on the other hand, is a directive of action, requiring the Clerk's office to issue an arrest warrant under certain circumstances. This action impacts the rights and liabilities of the parties involved. We know that to be true because Plaintiff Sleater was arrested and incarcerated pursuant to one of these arrest warrants. She also had the opportunity to challenge the arrest warrant at the trial court and Washington Court of Appeals. For that reason, the directive in this case involves a judicial act.

In sum, the Pay or Appear program involved the judicial act of issuing arrest warrants. The authority to issue such an arrest warrant is granted to superior court judges by Washington law. Wash. Rev. Code § 9.94B.040(4)(b). The policy requiring the Clerk's office to issue these arrest warrants was created by Benton County Superior Court judges. By issuing these arrest warrants, the Clerk's office

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 15**

was simply performing a task that is "an integral part of the judicial process." *Mullis*, 828 F.2d at 1390. For that reason, the Clerk's office enjoys absolute quasi-judicial immunity for issuing arrest warrants under the Pay or Appear program.

Because the Clerk's office is immune from suit, so is Benton County. *See Coyle v. Baker*, No. CV-12-0601-LRS, 2013 WL 3817427, at *1 (E.D. Wash. July 22, 2013) ("The public policies which require immunity for prosecuting attorney and judges, also requires immunity for both the state and the county for acts of judicial and quasi-judicial officers in the performance of the duties of their respective officers[.]"); *Kay v. Thurston County*, No. 08-5041-RBL, 2008 WL 5000192, at *3 (W.D. Wash Nov. 20, 2008) ("quasi-judicial immunity extends to the County and State.").

## CONCLUSION

For the reasons set forth above, the Court finds Benton County is entitled to summary judgment in its favor.

**IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, ECF No. 87, is **GRANTED**.

2. Plaintiff's 42 U.S.C. § 1983 claims against Benton County are **DISMISSED with prejudice**.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and provide copies to counsel, and close the file.

**DATED** this 2nd day of May 2019.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ^ 16**